United States District Court
District of Massachusetts

|  |  |
|---|---|
| BCS CallProcessing, Inc., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Sustainable Aquatic Food Exports, )<br>LLC, et al., )<br>)<br>Defendants. )<br>) | Civil Action No.<br>25-10849-NMG |

MEMORANDUM & ORDER

GORTON, J.

This case arises out of a four-count complaint, wherein plaintiff, an IT services provider, alleges breach of contract, promissory estoppel, conversion and unjust enrichment against a defaulting customer in the exporting business.

I. **Facts**

BCS CallProcessing, Inc. ("plaintiff" OR "BCS") is a Massachusetts corporation that provides IT services and equipment to clients. Sustainable Aquatic Food Exports, LLC ("SAFE" or "defendant") is a Florida LLC, of which Yvonne Keller ("Keller") and Frederick Hundertmark ("Hundertmark") are the only members and both are Florida residents. Ms. Keller is the Registered Agent of SAFE and both she and Mr. Hundertmark are "managers" of SAFE.

1

In November, 2023, plaintiff and SAFE, Keller and Hundertmark (collectively "the defendants") held an initial discovery meeting about entering into a contractual relationship. SAFE planned to establish a base of operations in Florida and sought extensive IT services to support its clients across 32 countries. At that meeting, the individual defendants represented that SAFE was on the verge of receiving $6 billion in funding to pay for such services.

In furtherance of their business relationship, representatives of SAFE and BCS had numerous additional meetings before entering into a contractual relationship in which BCS was to provide IT services in exchange for compensation from SAFE. The contract grants BCS the right to terminate the Agreement for cause in the event of non-payment by SAFE and the right to charge a Termination Fee of 100% of the remaining monthly charges.

BCS agreed to defer billing until August, 2024, at SAFE's request, because SAFE represented it would receive its funding at that time. BCS issued its first invoice on August 1, 2024. SAFE did not pay that invoice and, despite several assurances thereafter, made no payments before January, 2025.

In January, 2025, BCS sent a formal demand for payment of the outstanding balance of $564,714. That amount remained unpaid and, on January 17, 2025, BCS terminated the contract and

demanded full payment and the return of its property and equipment.

Plaintiffs filed an original and an amended complaint in April, 2025. Defendants were served with the amended complaint on June 6, 2025, but did not answer within 21 days. Plaintiff requested entry of Default on August 4, 2025, and subsequently filed the pending motion for default judgment in the amount of $1,178,690.

## II. Legal Standard

Under Fed. R. Civ. P. 55(a)-(b), a district court may enter default judgment when a defendant has failed to answer or otherwise defend against a complaint. A final entry of default judgment requires a two-step process. First, the clerk enters a notice of default. Id. 55(a). Then, the Court may enter default judgment on the application of a party. Id. 55(b).

Once a notice of default judgment is entered under Rule 55(a), the Court must assume that all well-pled factual allegations in the complaint are true but need not accept the moving party's legal conclusions. Meredith Springfield Assocs., Inc. v. Puma Logistics, LLC, 2018 WL 3340370 (D. Mass. May 7, 2018). Judgment is warranted if 1) the Court has both personal and subject matter jurisdiction, 2) the allegations in the complaint state a cognizable claim for relief and 3) those allegations merit a discernable award of damages. Groden v.

3

Epstein, 2024 WL 4519724, at *1 (D. Mass. Oct. 17, 2024) (citing Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002)).

Unlike the analysis for liability, courts do not accept the validity of factual allegations related to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). "The court must ensure that the damages awarded are reasonable and demonstrated by the evidence." Control Point Assocs. v. Santosuosso, 2022 WL 1175008, at *2 (D. Mass. Apr. 20, 2022). Default judgment will not "expose a defendant to impositions not properly identified before the entry of default." Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d, 40 (1st Cir. 2012). Therefore, the amount of damages awarded by the court "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III. Analysis

#### a. Jurisdiction

Before allowing default judgment, the court must establish that it has both subject matter jurisdiction and personal jurisdiction over the defendant. Groden, 2024 WL 4519724, at *2. Federal district courts have diversity jurisdiction of all civil actions in which the matter in controversy exceeds $75,000 and there is complete diversity of citizenship. 28 U.S.C. §1332. To determine diversity of citizenship when one party is an LLC, the

domiciles of all members must be determined. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980).

Here, the plaintiffs allege damages of $1,178,690, exceeding the statutory minimum. As for diversity of citizenship, the two authorized members of SAFE, defendants Keller and Hundertmark, are domiciled in Florida. Plaintiff is incorporated and maintains its principal place of business in Massachusetts, making it a citizen thereof. With full diversity and the amount in controversy exceeding $75,000, there is diversity jurisdiction.

As for personal jurisdiction, under Massachusetts' long-arm statute, a court may exercise jurisdiction over a defendant who causes

> tortious injury in this commonwealth by an act or omission outside this commonwealth if . . . [they] derived substantial revenue from goods used or consumed or services rendered, in this commonwealth.

M.G.L. c. 223A, §3(d). Moreover, a court may exercise jurisdiction over a defendant that transacts business in Massachusetts. §3(a).

Here, plaintiff alleges that defendants derived substantial value from goods and services from their alleged unjust enrichment. Further, plaintiffs also allege a breach of contract with a Massachusetts company. Defendant has been properly served with process and has failed to answer the

amended complaint. Thus, this court has personal jurisdiction over defendants.

### b. Cognizable Claims

#### i. Count One: Breach of Contract

Plaintiff alleges that defendants breached their contract by failing to pay for services and equipment. Plaintiff claims it shipped desktop computers, laptops and other hardware and equipment to SAFE after they were ordered in May, 2024. Further, Plaintiff alleges that SAFE requested email migration services worth $13,000, which plaintiff provided. Those facts, taken as admitted, demonstrate plaintiff's performance of the contract and defendant's failure to pay for that performance. Thus, plaintiff has stated a legally cognizable claim.[1]

#### ii. Count Three: Unjust Enrichment

To establish unjust enrichment, plaintiff must prove that (1) it conferred a measurable benefit to the defendant, (2) it reasonably expected compensation from the defendant and (3) the defendant accepted the benefit with the knowledge, actual or chargeable, of the plaintiff's reasonable expectation. Stewart Title Guar. Co. v. Kelly, 146 N.E.3d 1142, 1151 (Mass. App. Ct. 2020).

---

[1] Because the parties formed a valid contract, there is no need to consider plaintiff's promissory estoppel claim in Count Two.

Here, BCS alleges that defendants received substantial benefit from services and equipment it provided and failed to return the equipment even after plaintiff terminated the contract. Plaintiff reasonably expected to be compensated for its contractual performance. Because SAFE repeatedly assured plaintiff that it would pay what it contractually owed, defendants knew of the plaintiff's reasonable expectation. See Stewart Title Guar. Co., 146 N.E.3d at 1151. Thus, the plaintiff's complaint states a legally cognizable claim for unjust enrichment.

### iii. Count Four: Fraud

To establish fraud, plaintiff must prove: (1) defendant made a false representation of a material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act on that representation, (4) that the plaintiff reasonably relied on that representation as true and (5) that they acted upon it to their damage. Commonwealth v. Lucas, 34 N.E.3d 1242, 1249 (Mass. 2015). A misrepresentation is material if a reasonable person would find the fact important in evaluating the proposed transaction. Zimmerman v. Kent, 575 N.E.2d 70, 74 (Mass. App. Ct. 1991). Plaintiff's reliance on the misrepresentation must be reasonable. Masingill v. EMC Corp., 870 N.E.2d 81, 89 (Mass. 2007).

Here, plaintiff alleges defendants made false representations about their financial standing and imminent ability to pay for services. SAFE's ability to pay for services was material to the making of the contract, and it can be inferred that defendants made misrepresentations to induce plaintiff to contract with them. Plaintiff relied on the false representation and entered into a contractual relationship with defendants.

As for the reasonableness of the reliance, plaintiff made several visits to SAFE's facility in Florida, during which its representatives were shown buildings that SAFE intended to acquire and had in depth discussions about how to outfit the buildings for SAFE's IT purposes. SAFE's deception was extensive. Thus, on the facts alleged in the complaint, plaintiff reasonably relied on the misrepresentation. See Masingill, 870 N.E.2d 89. Finally, plaintiff alleges that it has suffered financial damages by reliance on SAFE's misrepresentation in the amount of $1,178,687.

Having met all five elements, the plaintiff has stated a legally cognizable claim for fraud.

### c. Damages

Plaintiff is seeking damages for unpaid invoices and expenses in the amount of $564,714. It also seeks the remaining amount owed under the contract, $613,973, bringing the total to

$1,178,687. Plaintiff also requests attorneys' fees in the amount of $19,243 and $487 in costs. Finally, plaintiff requests contractually obligated interest on unpaid invoices of $70,721. In total, plaintiff seeks judgment in the amount of $1,268,654.

The Court may establish the amount of damages due to the plaintiff based upon the facts of record and may enter judgment accordingly. Pope v. United States, 323 U.S. 1, 13 (1944). Furthermore, pursuant to Fed. R. Civ. P. 54(d)(2)(A), a party can recover attorneys' fees in a default judgment if they submit a motion for attorneys' fees.

Here, plaintiff bases its claim for damages upon what is contractually owed and the Court will enter judgment accordingly. As for attorneys' fees, although plaintiff made a request in its motion for default judgment, it did not file a specific motion for attorneys' fees, and for that reason, the request will be denied.

In sum, the Court will enter judgment in favor of plaintiff in the amount requested, with the exception of attorneys' fees.

## ORDER

For the foregoing reasons, plaintiff's motion for default judgment is **ALLOWED** and plaintiff will be awarded a judgment as follows:

| | |
|---|---|
| for previously accumulated invoices and expenses | $ 564,714 |
| for the remaining amount owed | $ 613,973 |
| for costs | $     487 |
| for interest on unpaid amounts | $  70,721 |
| in total | $1,249,895 |

**So ordered.**

_____
Nathaniel M. Gorton
Senior United States District Judge

Dated: March 5, 2026